## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MCALLISTER, | ) | CASE NO. 5:20-cv-2556 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| SHERIFF GEORGE MAIER, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff John McAllister ("McAllister") filed this action under 42 U.S.C. § 1983 against Stark County Sheriff George Maier, Stark County Jail Administrator Tim Miller, Vital Core Heath Strategies Chief Executive Viola Riggins, and Vital Core Health Strategies Health Director Leah Carreon (collectively "defendants"). In the complaint, McAllister alleges the Stark County Jail physician denied him an antiviral medical treatment for hepatitis C. He states defendants were deliberately indifferent to his serious medical needs. He seeks release from jail and monetary damages.

## I.  Background

McAllister is a detainee at the Stark County Jail. Vital Core Health Strategies appears to be a private entity that provides medical care to inmates under contract with Stark County. McAllister alleges that on August 21, 2020, he was advised by the jail physician that he would not be receiving antiviral therapy for hepatitis C or cirrhosis of the liver. He indicates he sent a communication to Medical Director Leah Carreon regarding the treatment and she responded, "per our discussion, initiating therapy of direct acting antivirals for hepatitis C virus is contraindicated

in a jail setting[.]" (Doc. No. 1 (Complaint) at 3–4[1].) She advised McAllister to follow up with his hepatologist for initiating that treatment. McAllister contends he sent a grievance to the sheriff informing him that Vital Core Health Strategies was refusing to provide the antiviral treatment, but indicates that the sheriff did not respond to his grievance. McAllister claims he followed his grievance with a letter to the sheriff asking him to ensure that he would receive the antiviral treatment, but that the letter also went unanswered. Additionally, he claims he wrote a letter to Vital Core Heath Strategies Chief Executive Viola Riggins informing her that her agency was refusing him antiviral treatment for hepatitis C and asking her to intervene. McAllister does not indicate if or how she responded to his letter. Further, he contends he sent a grievance to jail administrator Tim Miller asking him to intervene. McAllister insists that Miller did not respond to his grievance. He avers that Vital Core Health Strategies has a protocol which denies antiviral treatment for hepatitis C until the patient is in more advanced stages of the disease. According to McAllister, this increases the chances for progression of the disease, as well as the development of cancer or death. He posits that defendants have been deliberately indifferent to his serious medical needs.

## II.      Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L.

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than an unadorned, the defendant unlawfully harmed me accusation. *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## III.    Analysis

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Baker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). Pretrial detainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239,

244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983), are analyzed under the same rubric as Eighth Amendment claims brought by prisoners. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency[.]" *Rhodes v. Chapman*, 452 U.S. 337, 346. 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are also not entitled to unfettered access to the medical treatment of their choice, *see Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), nor can they "expect the amenities, conveniences and services of a good hotel[.]" *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999) (similar). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats but does not reach those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9–10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), set forth a framework for courts to use when deciding whether certain conditions of

confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id*. Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (quotation marks and citation omitted). Routine discomforts of prison life do not suffice. *Id*. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id*. at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Albers*, 475 U.S. at 319. Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

The Sixth Circuit recently addressed jail and prison policies limiting antiviral medication to only those inmates with advanced hepatitis C.  *See Atkins v. Parker*, 972 F.3d 734, 736–40 (6th Cir. 2020).  The court recognized:

> Hepatitis C is a contagious virus that spreads through contact with bodily fluids. The virus causes liver damage that over time diminishes the liver's ability to remove toxins from the body. In some cases, the virus can lead to cirrhosis of the liver, liver cancer, and ultimately even death.
>
> Hepatitis C is a progressive virus, meaning that the disease's effects worsen over time. In the first six months after initial infection, somewhere between 15 and 25 percent of infected persons spontaneously recover. For those who do not recover, the virus proceeds to the "chronic" stage, during which the virus progressively scars the liver. The rate at which the virus causes scarring differs from person to person. Some people might not have serious scarring for 20 to 30 years, if at all; for others, scarring happens more quickly. The most common symptoms of the disease— which range from minor (fatigue, jaundice, nausea) to major (severe inflammation, skin lesions, cognitive impairment)—are not necessarily tied to the extent of liver scarring an infected person has suffered. Between 20 and 40 percent of persons who reach the chronic stage eventually develop cirrhosis; four percent develop liver cancer.

> There is no vaccine for hepatitis C. In the past, doctors treated the virus by injecting infected patients with drugs known as interferons, but that treatment brought little success and severe side effects. In 2011, the FDA approved a new class of drugs—known as direct-acting antivirals—that are superior to interferons in nearly every respect. Notably, for almost all patients who take them, direct-acting antivirals halt the progress of hepatitis C and eventually cause the virus to disappear completely. The antivirals are so effective that for the most part doctors have stopped using interferons entirely.
>
> But that efficacy comes at a price. In 2015, the cost of a single course of treatment using direct-acting antivirals was between $80,000 and $189,000. By the time of trial, those prices had dropped to between $13,000 and $32,000 per course of treatment.

*Id.* at 736–37. The court also stated that by 2019, approximately 24% of the inmate population, roughly 4740 inmates, at the Tennessee Department of Corrections were infected with hepatitis C. The cost to the state to provide antiviral treatments to all infected inmates would be between $61,620,000.00 and $151,680,000.00.[2] Recognizing that this exceeded the available funding, the court held that the policy of the Tennessee Department of Corrections to treat only the sickest of the inmates and to closely monitor the health of the others did not violate the Eighth Amendment. *Id.* at 739–40.

McAllister contests a substantially similar policy here. In light of the Sixth Circuit's holding in *Atkins*, McAllister's challenge to the policy itself does not state a colorable claim under the Eighth Amendment.

It is possible, however, to read McAllister's complaint as alleging that although he qualifies for treatment under the policy, he has been denied the antiviral medication. If that is the case, the Court must determine which of the defendants, if any, is responsible for making those decisions.

McAllister's claims against Stark County Sheriff George Maier, Stark County Jail

---

[2] These figures were derived by multiplying $13,000 (the lowest projected treatment cost) by 4740 infected inmates.

Administrator Tim Miller, and Vital Core Heath Strategies Chief Executive Viola Riggins are all based on their lack of response to his letters and grievances. McAllister does not allege that these individuals were directly involved in his healthcare decisions. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).

McAllister's claims against Vital Core Health Strategies Health Director Leah Carreon are also based on her response to his grievance.  He contends she responded by stating antiviral therapy was contraindicated in a jail setting. Based on these allegations, it would appear that Carreon plausibly had some personal knowledge and involvement in McAllister's healthcare. Whether Carreon's actions were deliberately indifferent to McAllister's serious medical needs is a question that cannot be resolved at the screening stage.

## IV.    Conclusion

For all the foregoing reasons, McAllister's claims against George Maier, Tim Miller, and Viola Riggins are dismissed pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith. This case shall proceed solely against Vital Core Health Strategies Health Director Leah Carreon. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the remaining defendant.

Also pending before the Court is McAllister's motion to proceed *in forma pauperis*. (Doc. No. 2.) The Court will address this motion in a separately published order.

**IT IS SO ORDERED**.

Dated: March 4, 2022

_____
HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE